EARNEST A. McKNIGHT, SR. and CONSTANCE E. McKNIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKnight v. Commissioner
Docket No. 4628-90
United States Tax Court
T.C. Memo 1992-241; 1992 Tax Ct. Memo LEXIS 270; 63 T.C.M. (CCH) 2853; April 23, 1992, Filed *270 Decision will be entered under Rule 155. Earnest A. and Constance E. McKnight, pro sese. C. Glenn McLoughlin, for respondent. GOFFE
GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653
Sec. 6653
(a)(1)(A)
(a)(1)(B)
1986
$ 21,231
$ 1,062
[1]
After concessions, [1] the issues remaining for decision are: (1) Whether petitioners qualify for 10-year income averaging treatment under section 402(e) for a lump-sum severance payment received from General Motors Corporation (General Motors). We hold that this lump-sum payment is not of the type defined under section 402(e) for such treatment. Therefore, petitioners may not average this payment over 10 years; (2) whether petitioners failed to report $ 2,041.80 in wages on their 1986 income tax return. We hold that petitioners did not include this amount on their 1986 income tax return; and (3) whether petitioners are liable for additions to *271 tax under section 6653(a)(1)(A) and (B). We hold that petitioners are liable for the additions to tax. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1986, and Rule numbers refer to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Cookson, Oklahoma, at the time of filing their petition. Petitioner Earnest A. McKnight, Sr. (Mr. McKnight) was a salaried employee of General Motors from 1963 to 1986. At the end of his career with the corporation, Mr. McKnight was a sixth-level supervisor in the *272 body shop at the General Motors assembly plant located in Oklahoma City, Oklahoma. In 1986, General Motors' management felt that the corporation had more salaried employees than needed and decided to offer a severance program to encourage older salaried employees to leave. It developed the General Motors Corporate Wide Special Separation Program (GM Plan). Mr. McKnight and similarly situated employees were given the opportunity to elect the GM Plan in 1986. General Motors provided eligible employees with a 5-page memorandum explaining the plan. Under the GM Plan, salaried employees below the age of 53 with less than 30 years' credited service could terminate employment and receive a one-time payment using a formula consisting of the employee's years of service and base salary as of August 1, 1986. The memorandum states clearly to all recipients of lump-sum payouts that the amount will be subject to all applicable Federal, state, and local income tax withholding, as well as FICA contributions. General Motors' management made no attempt to qualify the plan under section 401 as a pension, profit-sharing, or stock bonus plan. The lump-sum severance payment was separate and apart *273 from any benefits which a participating employee would receive from various corporation-sponsored qualified employee plans, including the General Motors Savings-Stock Purchase Program, the General Motors Employee Stock Ownership Plan, the General Motors Profit Sharing Plan, and the General Motors Retirement Plan. On October 8, 1986, Mr. McKnight elected to participate in the GM Plan. Accordingly, he received a lump-sum severance payment of $ 71,592, using the following formula: 20 months times $ 3,579.60 (base salary on August 1, 1986). On Mr. McKnight's 1986 Form W-2, Wage and Tax Statement, the total taxable wages for the year amounted to $ 112,608.80. This amount included the $ 71,592 lump-sum severance payment from the GM Plan. Mrs. McKnight prepared petitioners' 1986 income tax return. She used publications supplied by the Internal Revenue Service and H & R Block, a commercial tax preparation service. She had taken a course from H & R Block on the preparation of tax returns. She also did some research at a local library with respect to the treatment of a lump-sum severance payment. She sought no help from a bookkeeper, certified public accountant, or other professional *274 in preparing their 1986 income tax return. Petitioners reported total wages of $ 38,975 on their income tax return for 1986. Mr. McKnight asked his payroll supervisor at General Motors whether the lump-sum severance payout qualified for 10-year income averaging under the Internal Revenue Code. The payroll supervisor told Mr. McKnight that he (the payroll supervisor) was not sure whether the payout qualified for such treatment. Mr. McKnight also knew 6 co-workers who attempted to use the 10-year income averaging of the payout on their income tax returns and that this income averaging provision was determined to be improper. The Commissioner disallowed petitioners' reporting of their 1986 income under the 10-year income averaging provisions and increased their taxable income by $ 73,633. This increase includes the amount of the lump-sum payout from the GM Plan ($ 71,592) and the difference between petitioners' reported wages and the amount reflected on their Form W-2 ($ 2,041). The Commissioner also added additions to tax for negligence or intentional disregard of rule and regulations. OPINION Gross income is income from whatever source, including amounts that a taxpayer is *275 paid as compensation for services. Sec. 61(a). Severance pay from a taxpayer's employer is taxable income. ; , affd. ; . Section 402(e) provides a method for 10-year averaging of lump-sum distributions from employee benefit plans which are qualified under section 402(a). There is no dispute that the GM Plan from which petitioners received a severance payment is not a qualified plan. [2] A qualified plan is an element necessary to be eligible for the 10-year income averaging treatment. . A severance payment merely to reduce an employer's salaried work force is not a qualified plan. Sec. 402(a). Accordingly, the $ 71,592 which Mr. McKnight was paid does not qualify for 10-year averaging under section 402(e). . We sustain respondent's determination with regard to this issue. *276 Petitioners' provide no explanation or any evidence whatsoever regarding the $ 2,041.80 of omitted wage income. Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a); . We also sustain respondent's determination on this issue. The Commissioner determined additions to tax under section 6653(a)(1)(A) and (B). Negligence under section 6653(a) is lack of due care, or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . The determination of the Commissioner that petitioners' underpayment of tax was due to negligence or intentional disregard of rule or regulations is "presumptively correct and must stand unless the taxpayer can establish that * * * [they were] not negligent." , affg. . Petitioners therefore bear the burden of proving that they are not liable for the additions to tax. Rule 142(a); ; *277 . Petitioners have failed to carry this burden. Mr. McKnight knew of 6 colleagues from General Motors who were not permitted to use the 10-year income averaging provisions for the severance payment. Although we do not know the specific circumstance of those attempts to use the averaging method, we conclude that a reasonable and prudent person would have suspected that there may need to be further investigation before taking such a questionable position on an income tax return. Further, Mr. McKnight testified that he asked the payroll supervisor at General Motors about the availability of income averaging, and the payroll supervisor said he did not know whether it was proper treatment for the severance pay. This should have alerted petitioners of the need to investigate the matter more fully. Mrs. McKnight's testimony that she researched the law in various tax publications and at the local library is unpersuasive. She did not produce a photocopy of a rule or the name of a publication upon which she relied for using the 10-year income averaging method. Petitioners chose to disregard the rules, regulations on income *278 averaging, and they did not explain the omission of $ 2,041.80 from their return. On this record, we sustain the determination of the Commissioner with respect to the additions to tax. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. Petitioners concede that they did not report a refund of $ 376 from their 1985 Oklahoma income tax which was refunded to them in 1986. Petitioners also concede that they failed to report $ 146.86 in dividend income from the General Motors Employee Stock Ownership Plan.↩
2. At trial, the Court withheld ruling on the admissibility of three documents submitted by petitioners. We have reviewed the documents and conclude that they are irrelevant to the issues presented and, accordingly, sustain respondent's objection to their admission. The first document is an explanation of the General Motor's benefit plan for hourly workers (Mr. McKnight is a salaried employee), the second is Mr. McKnight's valuation of stock under his Employee Stock Ownership Plan (which is not in issue), and finally, a description of the "UAW- GM Pension Program" for employees separating after October 1, 1990 (Mr. McKnight was not a participant in this program when he retired in 1986).↩